In re KROH BROTHERS DEVELOP-MENT COMPANY, Kroh Brothers Equity Company, Kroh Brothers Realty Company, Kroh Investments I, Inc., Kroh Telecommunities, Inc., Ward Parkway Corporation, Debtors.

TMS ASSOCIATES, Ward Parkway Office Park South Associates Limited Partnership, and Allen Missouri, Inc., Plaintiffs/Appellants,

v.

KROH BROTHERS DEVELOPMENT COMPANY, Kroh Brothers Equity Company, Defendants/Appellees.

No. 88–W–358–5.
Bankruptcy Nos. 87–00641–1–11, 87–01263–1–11, 87–01265–1–11, 87–01266–1–11, 87–01930–1–11.

United States District Court,
W.D. Missouri, W.D.

April 10, 1989.

Michael J. Gallagher, Douglas M. Neeb, Kansas City, Mo., James C. McMillin, Werbel & McMillin, New York City, for plaintiffs-appellants.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Now before the Court are TSM Associates, Ward Parkway Office Park South Associates Limited Partnership's and Allen Missouri, Inc.'s (the "Allen & Co. Affiliates") interlocutory appeal of an order of the Bankruptcy Court dated November 22, 1988. The appeal centers on the motion of the above-captioned debtors to assume certain executory contracts and unexpired leases to which the Allen & Co. Affiliates are a party. In the order that is the subject of this appeal, the Bankruptcy Court held it had jurisdiction post-confirmation to consider the debtors' request to assume the contracts and leases. The appellants seek reversal of the Bankruptcy Court's order on several grounds. After review of the arguments advanced by the respective parties and the relevant law, the order of the Bankruptcy Court is affirmed and the case is remanded so that the Bankruptcy Court may resolve the remaining matters in this Chapter 11 proceeding.

### Factual Background

From February 13, 1987 through May 1, 1987, Kroh Brothers Development Compa-ny, its five affiliated corporations, and 27 partnerships each commenced Chapter 11 cases by filing voluntary petitions under the Bankruptcy Code.[1] Prior to the commencement of these cases, debtors had interests in parcels of improved real property (primarily shopping centers and office buildings) located throughout the continental United States. The Allen & Co. Affiliates were involved in the operation and management of debtors' property prior to the commencement of these cases.

During the pendency of these cases, debtors sold assets, defended motions to modify the automatic stay, provided adequate protection to secured creditors, conducted investigations into the conduct of the prepetition business operations of debtors and otherwise administers these estates. Because they required the assistance of a third party with substantial financial capability and familiarity with the local and national real estate markets to formulate a plan of reorganization, the debtors entered into an agreement with I.I. Ozar, Frank Morgan, and Sherman W. Dreiseszun (the Ozar Partnership) for that purpose, which agreement was approved by the Bankruptcy Court.

On January 11, 1988, debtors and the Ozar Partnership filed their Second Amended Joint Plan of Reorganization (the "Plan") and Second Amended Disclosure Statement (the "Disclosure Statement") related thereto. After several hearings on earlier versions of the Plan and Disclosure Statement, the Bankruptcy Court entered an order approving the Disclosure Statement on January 12, 1988. Notice of approval of the Disclosure Statement and a hearing on confirmation of the Plan was mailed to all creditors and other parties at interest in debtors' Chapter 11 case, including the Allen & Co. Affiliates.

Article 11 of the Plan provides, in pertinent part, as follows:

Article 11. *Provisions for the Rejection of Executory Contracts and Unexpired Leases.*

---

1. The facts underlying this appeal are undisputed. The factual background outlined herein was taken from the Statement of Facts contained in appellee's brief.

11.1 *Rejection....* Except with respect to contracts and leases previously assumed or rejected by the Debtors and approved by the Court prior to the Confirmation Date, all other executory contracts of the debtors and unexpired leases under which the debtors are a lessee entered into prior to the applicable petition date which are not expressly assumed by the debtors pursuant to application filed by the debtors on or before the Confirmation Date or not otherwise specifically treated in this Plan or in the Confirmation Order shall be deemed to have been rejected by the debtors on the Confirmation Date.

With respect to unexpired leases of the debtors under which the debtors are a lessor, all such leases which are not expressly rejected by the Debtors pursuant to application filed by the Debtors on or before the Confirmation Date or not otherwise treated in this Plan or in the Confirmation Order shall be deemed to have been assumed by the Debtors on the Confirmation Date.

11.2. *Reservation of Rights.* The Debtors reserve the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time prior to the Confirmation Date.

Confirmation date is defined in Article 1 of the Plan as follows:

*Confirmation Date:* The date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code, *provided,* however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which the stay expires or is no longer in effect.

Effective date is defined as follows:

*Effective Date:* The first business day after the confirmation date.

The retention of jurisdiction provisions of the Plan provides, in pertinent part, as follows:

13.1 *Purposes.* Notwithstanding entry of the Confirmation Order, the Court shall retain jurisdiction over the Chapter 11 case for the following purposes:

... (c) To determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which any debtor is a party or with respect it may be liable, and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

On March 2, 1988, debtor filed a motion (the Modification Motion) to modify the Plan to, among other things, grant debtors an additional 180 days after the effective date to file motions to assume or reject contracts or unexpired leases.[2]

On March 3, 1988, in accordance with the reservation of rights set forth in Article 11.2 of the Plan, debtors filed their amended motion to assume certain agreements, including the Allen & Co. Associates contracts, to the extent they constituted executory contracts of the debtors (the "Assumption Motion").

On March 8, 1988, the Bankruptcy Court entered its findings of fact, conclusions of law and order confirming the Second Amended Joint Plan of Reorganization proposed by the debtors and the Ozar Partnership as modified (the "Confirmation Order"). Paragraph 11 of the Confirmation Order provides in relevant part:

Except with respect to contracts and leases previously assumed or rejected by the debtors, all other executory contracts of the debtors and unexpired leases under which the debtors are a lessee entered into prior to the petition date which are not expressly assumed by the debtors pursuant to application filed by the debtors on or before the confirmation date or are not otherwise specifically treated in the Plan or in this Confirmation Order shall be deemed to have been rejected by the debtors on the confirmation date.

---

**2.** As it turns out, no such motions to assume or reject were filed by the debtors.

Paragraph 24 of the Confirmation Order provides that the Bankruptcy Court shall retain jurisdiction over the debtors' Chapter 11 case in accordance with Article 13 of the Plan. No appeal was taken from the Confirmation Order.

On March 8, 1988, the same date the Confirmation Order was entered, the Bankruptcy Court entered its order granting the motion to modify the Plan (the "Modification Order"). The entry of this order was subject to the right of creditors and other parties at interest to object. The Modification Order permitted parties at interest to object to the entry of the Modification Order within ten days. On March 8, 1988, the Bankruptcy Court accordingly issued the notice of:

(i) Entry of Order of Confirmation of Plan;

(ii) Substantive Consolidation of the Debtors;

(iii) Injunction Against Efforts to Collect Debts;

(iv) Time Period for Filing.

(a) Claims Arising from the Rejection of Executory Contracts or Unexpired Leases and

(b) Fee Applications.

(v) Entry of Order Modifying Plan; and

(vi) Deadline for Objections to Entry of Order Modifying Plan.

The notice stated, among other things, that if any objections to the Modification Order were timely filed and served, hearing thereon would be held on March 29, 1988.

On March 18, the Allen & Co. Affiliates timely filed an objection to the Modification Order and Motion. The Allen & Co. Affiliates argued, *inter alia*, that 180–day extension of the time within which to file motions to assume or reject contracts would result in substantial prejudice to them and suggested that the time for filing motions be shortened to 60 days or less. In response to this objection, debtors and the Allen & Co. Affiliates agreed to limit the additional time by which debtor could assume or reject other contracts with the Allen & Co. Affiliates to 60 days. Nevertheless, debtor filed no motion to assume or reject any additional contracts with the Al-

len & Co. Affiliates during the 60–day period.

On March 23, 1988, the Allen & Co. Affiliates filed their response to debtors' assumption motion, filed on March 3, 1988. The Allen & Co. Affiliates agreed to bifurcated hearings on the motions to assume the Allen & Co. contracts, as follows:

a. The issue at the first hearing would be (i) whether, pursuant to the terms of the Plan and the applicable law, the Bankruptcy Court had authority to enter an order authorizing debtors to assume Allen contracts post-petition, and (ii) whether debtors may assume the contracts under Section 365(d)(2) of the Bankruptcy Code, and

b. The issue at the second hearing would be whether the specific Allen contracts could be assumed.

On November 22, 1988, the Bankruptcy Court entered its order holding that it had jurisdiction to hear and determine the assumption motion, filed on March 3, 1988, but reserving the issue with respect to 365(d)(2).

Subsequent to the ruling on the above motion, the appellants herein moved pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rule 8003 for this Court to consider the appeal of the Bankruptcy Court's order on an interlocutory basis. After consideration of the relevant arguments, this Court found the issue to be one of jurisdiction, and that the law was unsettled on the issue of whether the Bankruptcy Court could properly retain jurisdiction to entertain assumption motions post-confirmation. Consequently, the Court granted the motion to appeal the Bankruptcy Court's interlocutory order.

*Discussion*

A. *Whether the Bankruptcy Court may consider pending motions to assume executory contracts and leases post-confirmation.*

The logical starting point for any discussion of the propriety of a Bankruptcy Court retaining jurisdiction for the purpose of resolving pending assumption motions is the pertinent code provision dealing with assumption or rejection of executory con-

tracts. Section 365(d)(2) provides, in pertinent part, as follows:

> In a case under Chapter 9, 11, 12 or 13 of this Title, the Trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of the plan but the Court, on the request of any party to such contract or lease, may order the Trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2).

The legislative history of this section is somewhat instructive on the issue at hand:

> Subsection (d) places time limits on assumption or rejection. A liquidation case, the Trustee must assume within 60 days ... if not assumed, the contract or lease is deemed rejected. In a rehabilitation case, the time limit is not fixed in the bill. However, if the party to the contract or lease requests the Court to fix a time, the Court may specify a time within which the Trustee must act. This provision will prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate.

H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 348 (1977) *reprinted in* U.S.Code Cong. & Admin.News 5963, 6304 (1978); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 59 (1978) *reprinted in* U.S.Code Cong. & Admin. News 5787, 5845 (1978).

Section 365(a) of the Bankruptcy Code authorizes the Trustee or, in this case, the debtor in possession, to assume or reject any executory contract or unexpired lease of the debtor. Section 365(a) further provides that this assumption or rejection is subject to Court approval. *In re Lew Mark Cleaners Corp.*, 86 B.R. 331, 333 (Bankr.E.D.N.Y.1988); *In re Dublin Pub, Inc.*, 81 B.R. 735, 736 (Bankr.N.D.Ga.1988). Subsection (d), outlined previously, establishes a schedule by which the Trustee must act to assume or reject. The Allen & Co. Affiliates, however, contend that not only must the debtor in possession act within the time constraints outlined in Section 365(d), but the Court must also rule on the propriety of the assumption prior to the confirmation date.[3] After a review of the relevant authorities and arguments made by both sides, it is this Court's opinion that 365(d)(2) only sets forth the time limitations in which the Trustee must act. There is no such limitation on the Court, and with the proper retention of jurisdiction contained in the confirmation Plan, the Court may properly consider pending motions post-confirmation.

Although there is scant authority on the issue of whether Section 365(d)(2) requires the Court to act under the same time constraints as the trustee, the overwhelming majority of cases under an analagous provision, 365(d)(4), find the Bankruptcy Court is not so burdened.[4] Under 365(d)(4) the Trustee must assume or reject non-residential real property leases within 60 days of the petition for relief. To comply with this time limitation, a motion must be made by the Trustee within the 60–day period, unless the Court extends that time. *In re Victoria Station, Inc.*, 840 F.2d 682, 684 (9th Cir.1988).

Addressing the issue of the Court's duties under this provision, the overwhelm-

---

**3.** The Allen & Co. Affiliates request the Court to strictly construe the relevant section and to refrain from adding a "judicial gloss" to its plain meaning. This approach, the appellants contend, will reveal their argument's merit. The Court has no quarrel with the appellants' recitation of the principles of statutory construction. However, this approach presupposes that there is language to construe. This is not the case here. The section only speaks to the Trustee or debtor-in-possession's duties. Nowhere in the section is the Court's duty explained; indeed, there is no mention of the Court's duties except with respect to a request to fix a time certain in which the Trustee must act. Consequently, the question of when a Court must act on the motions must be determined by other means.

**4.** Section 365(d)(4) provides as follows:

> [I]n a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the Court, for cause, within the 60–day period, finds, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4).

ing majority of cases have found that the 60–day time limitation does not bind the Court. As the Court in *In re By–Rite Distributing*, 55 B.R. 740 (N.D.Utah 1985) stated:

> Section 365 contemplates two distinct actions, one by the trustee (or debtor in possession) and one by the court. The trustee assumes or rejects, and the court approves. The Code does not specify how the trustee is to assume or reject a lease, but the trustee's action is different from the court's. Such is the import of Section 365(a), which says that "the trustee, subject to the court's approval, may assume or reject any ... unexpired lease of the debtor."
>
> The court concludes that the trustee assumes or rejects the lease within the meaning of Section 365(d)(4) when he makes up his mind to do so and communicates his decision in an appropriate manner, such as by filing a motion to assume. The assumption may become effective only after the court approves it. It is, in effect, subject to defeasance by the court. But the trustee's act of assuming a lease is complete for purposes of Section 365(d)(4) before the trustee ever obtains court approval.... And according to the statute, it is only the trustee's action that must occur within 60 days.

*Id.* at 742–43 (citation omitted).

This Court's research reveals the majority of courts addressing this issue are in accord. *Victoria Station*, 840 F.2d at 684;

*In re Delta Paper Co.*, 74 B.R. 58, 60 (Bankr.E.D.Tenn.1987); *In re National Paragon Corp.*, 74 B.R. 180–81 (Bankr.E.D.Penn.1987); *In re Chandel Enterprises, Inc.*, 64 B.R. 607, 609 (Bankr.C.D.Cal.1986); *Matter of Burns Fabricating Co.*, 61 B.R. 955, 957–58 (Bankr.E.D.Mich.1986); *In re Re–Trac Corp.*, 59 B.R. 251, 254–55 (Bankr.D.Minn.1986); *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 52 B.R. 850, 852–55 (Bankr.N.D.Ill.1985). *But see In re House of Emeralds*, 57 B.R. 31, 35 (Bankr.D.Hawaii 1985).[5]

The reasoning underlying the above cases addressing Section 365(d)(4) is equally applicable to the constraints of Section 365(d)(2). The time limit set forth in Section 365(d)(2) of the Code requires only that the trustee or debtor-in-possession file its motion to assume prior to confirmation. This conclusion is valid for several reasons. First, the legislative history speaks only to the trustee. Although determining legislative intent is a difficult task, it is illogical to believe Congress would have omitted all references to Court action if it desired to bind the courts to the same timetable as the trustee. Thus, the fact that Section 365(d)(2) is silent as to any time limit for court approval of pending motions, while other sections of the Bankruptcy Code requiring court action within a specified time provide so expressly, is indeed telling. *See, e.g.* 11 U.S.C. § 362(e).[6]

Second, the appellants' construction of this section would effectively reduce the time to act allotted to the trustee in Section 365(d)(2). That is, the Trustee would be

---

**5.** The Court in *In re House of Emeralds* found the legislative history of Section 365(d)(4) required the trustee as well as the Court to act within the 60–day period of limitations. The purpose behind the section is a desire to protect lessors from having to refrain from pursuing action against non-paying tenants during the entire pendency of the bankruptcy proceedings. Accordingly, to resolve this problem, and provide for uniformity of inconvenience to landlords irrespective of the provision under which the debtor seeks relief, the Congress enacted 365(d)(4). The provision now requires the trustee or the debtor, depending on the provision, to reveal their intent with respect to a particular lease on an expedited basis. The problem with the reasoning of *In re House of Emeralds* and cases of similar import is their

holding with respect to the courts. That is, to the extent these cases find the Bankruptcy Courts also bound by the underlying policy of the section, they are unsupported by the legislative history and the plain language of the statute. *See In re By–Rite Dist., Inc.*, 55 B.R. 740 (N.D.Utah 1985).

**6.** Section 362(e) addresses relief from the automatic stay and provides in pertinent part:

> Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate ... such stay is terminated with respect to the party in interest making such request, *unless the court*, after notice and a hearing orders such stay continued in effect ...

11 U.S.C. § 362(e) (emphasis supplied).

shouldered with the task of determining how long the Bankruptcy Court requires to rule on a motion prior to the anticipated confirmation date and would be required to file the motion by that date rather than the time limit set out in the section—the confirmation date. Alternatively, a motion filed on or near the confirmation date could set confirmation of the Plan back weeks and possibly months while the Court entertained the motions. Such a result is undesirable and unnecessary under the Code.

Given that the Court agrees with the appellee that the Court is not bound by the time constraints contained in Section 365(d)(2), the Court must also agree that the Bankruptcy Court's retention of jurisdiction, pursuant to the reorganization plan, was necessary to rule on the motions and permissible under the Code. Appellants have not convinced this Court that Congress intended to deprive the Bankruptcy Courts of post-confirmation jurisdiction over issues, such as issues the Court addresses today, pending at the time of confirmation. Had Congress intended such a limitation of jurisdiction, it would have found appropriate language to do so. There is no such language in the Bankruptcy Code nor is there any such intent in the legislative history relating to the sections at issue here. This conclusion is supported by Bankruptcy Rule 3020(d), adopted pursuant to order of the Supreme Court of the United States, which provides as follows:

> (d) *Retained Power.* Notwithstanding the entry of the order of confirmation, the court may enter all orders necessary to administer the estate.

The Advisory Committee note to the subdivision states:

> Subdivison (d) clarifies the authority of the court to *conclude matters pending before it prior to confirmation* and to continue to administer the estate as necessary, e.g., resolving objections to claims. (emphasis supplied)

The leading treatise in this area explains the rule as follows:

> Rule 3020(d) provides that the Court may enter such orders as may be necessary to administer the estate. [T]he power retained by the Court is parallel to the power retained under Section 1142(b) of the Code. However, unlike the power provided by that section to cause the implementation of the Plan, Rule 3020(d) deals with matters of administration of the estate which may be left over notwithstanding confirmation of a plan. Thus, the Court may, after confirmation, make determinations concerning liens on property of the estate.

8 *Collier on Bankruptcy,* ¶ 3020.06, 3020–7—3020–8 (15th Ed.1988).

This provision is particularly important to this appeal because the assumption motion was pending before the Bankruptcy Court prior to confirmation. Furthermore, a substantial number of courts have determined post-confirmation jurisdiction exists under the Bankruptcy Code with respect to the resolution of many different issues.[7]

Finally, the Court agrees with the appellees that the just, speedy and inexpensive administration of Bankruptcy cases requires the retention of jurisdiction provisions be upheld. The chief purpose of Bankruptcy cases is to secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time, and to return the debtor to the marketplace. It is not practical for all matters permitted to be raised prior to confirmation to be concluded by the date of confirmation. Retention of jurisdiction provisions are important because they permit the confirmation of plans before every last issue in the case is resolved.

The two reported cases on this issue are consistent with the above reasoning. Both *In re Malden Mills, Inc.,* 35 B.R. 71 (Bankr.D.Mass.1983); and *In re J.M. Fields, Inc.,* 26 B.R. 852 (Bankr.S.D.N.Y.

---

**7.** Appellees have cited the Court to numerous cases in support of this statement. *See, e.g., In re Join–In Int'l (U.S.A.), Ltd.,* 76 B.R. 57, 58 (Bankr.S.D.N.Y.1987) (when jurisdiction specifically retained in the plan, to recover fraudulent conveyances pursuant to section 548); *In re Chernicky Coal Co.,* 67 B.R. 828, 831–32 (Bankr.

W.D.Pa.1986) (to hear complaint filed by creditor, post-confirmation, to recover a post-petition transfer under section 549); *In re J.E. Jennings, Inc.,* 46 B.R. 167, 170–71 (Bankr.E.D.Pa.1985) (to recover preferential transfers under Section 547).

1983) support appellees' position that the Bankruptcy Court properly retained jurisdiction post-confirmation to address pending motions to assume executory contracts. Irrespective of the fact that both cases dealt with the rejection of executory contracts rather than assumption, and both cases were decided under the previous Act, their logic is just as compelling today as it was when the cases were ruled.

In *Malden Mills*, the debtor in possession filed a motion to reject an executory contract one hour before the Plan of reorganization was confirmed. The lessor alleged that notice, hearing and the court's approval of the motion must all occur prior to confirmation of the Plan under 365(d)(2). The Plan in question, as the Plan at issue here, provided for the retention of jurisdiction to hear and determine matters arising in connection with the assumption or rejection of executory contracts. The Court reasoned that the retention of jurisdiction clause provided the court with jurisdiction to permit it to rule on a pending motion to reject. The court further reasoned that it would be impossible to require all issues to be resolved prior to confirmation. *Id.* at 73. The *In re J.M. Fields* case is of similar import.

Perhaps the underlying rationale of *In re J.M. Fields* best outlines the policy justification for today's decision:

> Requiring final determination prior to confirmation of all applications to reject a lease, with subsequent appeals and possible imposition of stays, would postpone confirmation of a debtor's plan of arrangement, thus impeding the debtor's rehabilittion and return to the marketplace. Such an outcome thwarts the very aim of reorganization proceedings.

*In re Fields*, 26 B.R. at 857.[8]

Accordingly, it is hereby

ORDERED that the judgment and order of the Bankruptcy Court is affirmed. This case is remanded to the Bankruptcy Court for further proceedings in resolution of this Chapter 11 case.

---

8. Appellants' final argument centers on the notice they received regarding the Modification Motion. They contend that the Confirmation Order granting debtors an additional 180 days to accept or reject executory contracts was entered without adequate notice. The Court agrees with appellees that this objection is irrelevant in light of the fact that the assumption of these contracts is not proceeding through this section of the Plan. Rather, debtors are moving to assume the contracts pursuant to the original Confirmation Plan to which the appellants had adequate notice. Accordingly, the Court finds this argument to be without merit.