**In re: VISION METALS, INC., et al., Debtors.**

**Vision Metals, Inc., Plaintiff,**

**v.**

**SMS Demag, Inc. Defendant.**

**Bankruptcy No. 00–4205 (MFW).**
**Adversary No. 02–6528.**

United States Bankruptcy Court, D. Delaware.

July 26, 2005.

Kimberly Lawson, Richard Allen Keuler, Jr., Reed Smith LLP, Wilmington, DE, J. Frank McKenna, Albert Bates, Jr. IV, Pittsburgh, PA, Counsel for SMS Demag, Inc.

Neil B. Glassman, Steven M. Yoder, Ashley B. Stitzer, The Bayard Firm, Wilmington, DE, Kenneth Oestreicher, Howard R. Feldman, Kristin P. Herber, Whiteford, Taylor, & Preston, Baltimore, MD, Counsel for Vision Metals, Inc.

### MEMORANDUM OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Motion for Reconsideration filed by Vision Metals, Inc. ("Vision") of the Court's decision dated May 26, 2005 (the "May 26 Opinion"), which granted the Motion for Judgment on the Pleadings filed by SMS Demag, Inc. ("Demag"), with respect to Count IV of Vision's Complaint.[2] For the reasons stated herein, the Court will grant reconsideration but affirm its dismissal of Count IV.

### I. BACKGROUND

The factual background of this case is recited in the May 26 Opinion and will not be repeated. On June 6, 2005, Vision filed the Motion for Reconsideration, which has been fully briefed and is ripe for decision.

### II. JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (E), (H), & (O).

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. The Court dismissed Counts V and VI of Vision's Complaint on July 14, 2004, as a result of Demag's first Motion for Judgment on the Pleadings. *Vision Metals, Inc. v. SMS Demag, Inc. (In re Vision Metals, Inc.),* 311 B.R. 692 (Bankr.D.Del.2004). The Court dismissed the remaining Counts on May 26, 2005, as a result of Demag's Second Motion for Judgment on the Pleadings. *Vision Metals, Inc. v. SMS Demag, Inc. (In re Vision Metals, Inc.),* 325 B.R. 138 (Bankr.D.Del. 2005).

## III.  DISCUSSION

### A.  Standard of Review

A motion for reconsideration is not specifically addressed in the Federal Rules of Civil Procedure; rather, such motions generally fall within the parameters of Rule 59(e), which allows a party to file a motion to alter or amend a judgment.  Fed. R. Bankr.P. 9023; 12 *Moore's Federal Practice—Civil* § 59.30[2][a] (3d ed.  2005) ("[A] Rule 59(e) motion involves the reconsideration of matters properly encompassed in a decision on the merits.").

■ A motion for reconsideration is an extraordinary means of relief in which the movant must do more than simply reargue the facts or law of the case.  *See, e.g., North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995) (holding that a motion to alter or amend judgment must be based on: (1) an intervening change in controlling law; (2) new evidence not previously available; or (3) the need to correct clear error of law or prevent manifest injustice); *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 908 (3d Cir. 1985) ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."); *Stanziale v. Nachtomi,* No. 01–403, 2004 WL 1812705, *6, 2004 U.S. Dist. LEXIS 15664 at *2–3 (D.Del. Aug. 6, 2004) (stating that a court may grant a motion for reconsideration "if it appears that the court has patently misunderstood a party, has made a decision outside the adversarial issues presented by the parties, or has made an error not of reasoning, but of apprehension."); *Dentsply Int'l., Inc. v. Kerr Mfg. Co.,* 42 F.Supp.2d 385, 417 (D.Del.1999) (holding that motions for reconsideration "should only be granted sparingly and should not be used to rehash arguments already briefed or allow a 'never-ending polemic between the litigants and the Court.' ").

### B.  Count IV—Fraudulent Transfers

#### 1.  Error of Law

■ Vision asserts that the Court erred in granting Demag's Motion for Judgment on the Pleadings as it relates to Count IV of its Complaint by holding that Vision's pre-petition release of claims against Demag in the First Agreement released fraudulent transfer claims of creditors under state law.

In the May 26 Opinion, the Court concluded that:

> The First Agreement also released any claims Vision had against Demag under the Original Agreement. . . . Vision argues that the First Agreement, executed pre-petition, could not release the fraudulent transfer claims under section 548 because they did not come into existence until after Vision filed bankruptcy.
>
> At the time the First Agreement was executed, however, Vision did have the right under Texas law to avoid the transfers it seeks to avoid in the Complaint.

*Vision Metals, Inc. v. SMS Demag, Inc. (In re Vision Metals, Inc.),* 325 B.R. 138, 146–47 (Bankr.D.Del.2005).

This conclusion was incorrect.  Pre-petition Vision did not hold any claim under Texas law to avoid the Original Agreement as constructively fraudulent; that claim belonged to its creditors.  *E.g., Ransom v. Ransom,* 252 S.W.2d 212, 213 (Tex.Civ. App.1952) ("It is well settled that as between the parties to the transfer, a conveyance made in fraud of creditors passes title to the vendee and is subject to attack only by creditors or other persons coming under the provisions of [the Texas Uniform Fraudulent Transfer Act].").  Therefore,

Vision could not release such a claim by executing the First Agreement.

Thus, the Court did commit a legal error in the May 26 Opinion and will grant Vision's Motion for reconsideration. However, after considering the parties' arguments, the Court concludes that there are alternative grounds for granting Demag's motion to dismiss Count IV of the Amended Complaint.

### 2. *Alternative Holding*

■ In the May 26 Opinion, the Court stated an alternative basis for dismissing Count IV of Vision's Complaint. Specifically, the Court addressed the effect that Vision's post-petition assumption of the First Agreement had on its right to assert those state law causes of action:

> Additionally, when the First Agreement was assumed by Vision in the bankruptcy case, Vision's right to pursue fraudulent transfer claims under the Bankruptcy Code had arisen and, by assumption of the First Agreement, was waived as well. Therefore, the releases in the First Agreement preclude Vision from now asserting the fraudulent transfer action under either bankruptcy or Texas law.

*Vision Metals, Inc.,* 325 B.R. at 146–47.

Vision asserts nonetheless that the Court erred by concluding that Vision's post-petition assumption of the First Agreement constituted a release of Vision's post-petition right to avoid fraudulent transfers to Demag under the Bankruptcy Code and state law. Vision reasons that the release contained within the assumed First Agreement was a pre-petition release and that the assumption of the First Agreement in the post-petition period did nothing to release any rights that had accrued after the release was originally executed.

The Court finds nothing in Vision's argument that changes its conclusion that Vision may not pursue a constructive fraud action under state or federal law. The Court will, however, take this opportunity to explain further the basis for its conclusion that the assumption of the First Agreement waived Vision's right to pursue constructive fraud claims against Demag.

#### a. *Post–Petition Causes of Action*

■ After Vision filed bankruptcy, causes of action belonging to state law creditors vested in Vision as the debtor in possession. *E.g., Haskell v. Bruno's, Inc. (In re PWS Holding Corp.),* 303 F.3d 308, 315 (3d Cir.2002) (holding that creditors' pre-petition state law fraudulent transfer actions vested in the debtor and could be released by it); *In re Bridge Info. Sys.,* 325 B.R. 824, 835 (Bankr.E.D.Mo.2005) ("[I]f a creditor's putative state law cause of action challenges the propriety of a pre-petition transfer because the debtor failed to receive adequate consideration, that cause of action belongs to the debtor's estate.... [A]s long as the putative state law cause of action has the same focus as a fraudulent conveyance action under 11 U.S.C. § 548(b), only the trustee has standing to bring the claim.").

#### b. *Law of the Case*

Therefore, the right to avoid pre-petition transfers made under the Original and First Agreements that was previously vested in state law creditors was vested in Vision as of the petition date. At that time, Vision had the right under section 544 to seek to avoid the Original and First Agreement (and payments made under them) as constructively fraudulent under Texas law. It did not.

Instead, Vision sought to assume the First Agreement, asserting it was in the best interests of the estate and its credi-

tors to do so. Part of the consideration for the execution of the First Agreement was the release of all claims between Vision and Demag under the Original Agreement. If the Original Agreement was constructively fraudulent, then it would not have been in the best interests of the estate and creditors of the estate for Vision to assume the First Agreement. Vision asserted instead, and the Court found, that the assumption of the First Agreement was in the best interests of Vision and its creditors.

That conclusion is now the law of the case and cannot be re-litigated or overturned. *E.g., Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815–16, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (explaining that the doctrine of law of the case applies when a court makes a decision on a rule of law and the decision subsequently governs the same issues in the later stages of the same case; the rule "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.' ") (citation omitted). Indeed, Vision's prior attempt to overturn the effects of the assumption order was rejected by this Court in its July 14, 2004, Opinion.

### c. *Judicial Estoppel*

■■ Vision is also barred by the doctrine of judicial estoppel from asserting that the Original or First Agreement (and payments made under them) should be voided as constructively fraudulent. "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. NLRB,* 911 F.2d 1214, 1217–18 (6th Cir.1990). *See also Paul v. Monts,* 906

F.2d 1468, 1473 (10th Cir.1990) ("A litigant is required to be consistent in his conduct. He may not maintain a position regarding a transaction wholly inconsistent with his previous acts in connection with that same transaction."); *Lewis Indus. v. Barham Constr., Inc.,* 878 F.2d 1230, 1231 (9th Cir.1989) (affirming a ruling that estopped the debtor from arguing breach of contract after it failed to raise the issue at the assumption hearing); *Cukierman v. Mechs. Bank of Richmond (In re J.F. Hink & Son),* 815 F.2d 1314, 1318 (9th Cir.1987) ("The notion that a party in bankruptcy can be permitted to thwart a bankruptcy order which has been conceived and fostered through its participation has been vigorously rejected.").

Vision's present argument that the Original and First Agreements should be voided as constructively fraudulent transfers is inconsistent with the success it achieved in convincing the Court earlier that the assumption of the First Agreement (and the concomitant settlement of claims arising out of the Original Agreement) was in the best interest of Vision and its creditors. Since it was successful in the prior action, judicial estoppel precludes Vision from now asserting that the Agreements should be voided.

This conclusion is analogous to cases holding that assumption of a contract precludes a later attempt to recover payments made under that contract as preferences. *See, e.g., Kimmelman v. The Port Auth. of N.Y. and N.J. (In re Kiwi Int'l Air Lines, Inc.),* 344 F.3d 311, 323 (3d Cir.2003) (holding that "the trustee's preference actions against each of the defendants was precluded, as a matter of law, by the debtor's earlier assumption of its agreements with them . . . ."); *In re Superior Toy & Mfg. Co.,* 78 F.3d 1169, 1174 (7th Cir.1996) ("An assumption order divests the trustee of subsequent claims to monies paid under

the contract whether they were paid prepetition or postpetition.... Section 547 and [section] 365 are mutually exclusive avenues for a trustee."); *Philip Servs. Corp. v. Luntz (In re Philip Servs. (Delaware), Inc.),* 284 B.R. 541, 553 (Bankr. D.Del.2002) ("[W]e conclude that once an executory contract is assumed, the trustee or debtor may not maintain a preference action to recover payments made prepetition pursuant to that contract."), *aff'd,* 303 B.R. 574 (D.Del.2003).

Of course, assumption of a contract under section 365 of the Bankruptcy Code may not always provide a defense to a fraudulent conveyance action. *E.g., Taylor v. Riverside–Franklin Prop. (In re Taylor),* 228 B.R. 491, 501 (Bankr.M.D.Ga. 1998) ("If Movant provided Debtor with exactly the amount of value required under the 1996 agreement, that fact would be irrelevant to the determination of whether Debtor received reasonably equivalent value for the stock. That fact would only suggest that Movant satisfied its contractual obligations to Debtor. But the Court's inquiry must be into whether this value received by Debtor was reasonably equivalent to the fair market value of the stock."). In this case, however, the Court concludes that in finding that assumption of the First Agreement (which released all claims under the Original Agreement) was appropriate, the Court cannot conclude that the Original Agreement was constructively fraudulent.

The Court, therefore, concludes that Count IV of Vision's Complaint must be dismissed because avoidance of the transfers made pursuant to the Original and First Agreement as constructively fraudulent is precluded by this Court's finding that assumption of the First Agreement (and its concomitant release of claims arising under the Original Agreement) was in the best interest of Vision and its creditors.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Vision's motion for reconsideration but will not alter or vacate its earlier order dismissing Court IV of Vision's Complaint.

An appropriate Order is attached.

### ORDER

AND NOW, this 26th day of JULY, 2005, upon consideration of the Motion for Reconsideration by Vision Metals, Inc., and the response thereto filed by SMS Demag, Inc., it is hereby

**ORDERED** that the Motion will be **GRANTED**; and it is further

**ORDERED** that the Order entered on May 26, 2005, **DISMISSING** Count IV of the Amended Complaint will not be altered or amended.